Allegheny West Civic Council, Inc., Appellant *v.* Zoning Board of Adjustment, City of Pittsburgh, Appellee.

Argued May 5, 1982, before Judges ROGERS, CRAIG and DOYLE, sitting as a panel of three.

*Frederick R. Nene,* for appellant.

*David J. Greenberg,* Assistant County Solicitor, with him *James H. McLean,* Legal Counsel, for intervenor, Community College of Allegheny County.

No appearance for appellee.

Opinion by Judge Craig, June 3, 1982:

Allegheny West Civic Council, Inc. appeals from an order of the Allegheny County Court of Common Pleas affirming the decision of the Zoning Board of Adjustment of the City of Pittsburgh which granted the Community College of Allegheny County (CCAC) a special exception to use an existing building for administrative office use.

CCAC recently purchased a building located in an A-1 District under the Pittsburgh Zoning Ordinance,[1] and containing five stories previously used as offices by the Holy Childhood Association, a charitable organization.

After the board granted CCAC's special exception request to use the building for "administrative and clerically related uses" (with three-car garage and nine parking stalls), Allegheny West appealed to the court of common pleas, which rejected its contention that occupancy could be granted only by means of a "conditional use," which requires review by the city

---

[1] No. 192-Series 1958, *as amended.*

planning commission and approval by the city council, rather than by the zoning board.

Section 971.03 of Pittsburgh's Zoning Ordinance, which regulates permitted uses in an A-1 District, provides for (a) conditional uses, (b) uses permitted only as special exceptions, and (c) other categories not germane to this case.

Uses permitted only as special exceptions, pursuant to Section 971.03(b), include "[u]se of land and the erection, alteration or enlargement of structures for any use permitted in Section 955.02 of the C-3 district. . . ." Section 971.03(b)(3). Section 855.02 lists fifty-three classifications of uses; public educational use is not in that listing, but it does include No. 10, "Business college or private school operated as a commercial enterprise," and No. 33, "Office, professional or business."

Uses permitted in the A-1 district only as conditional uses, requiring approval by the city council, pursuant to Section 971.03(a), include "[a]ny conditional use permitted in Section 955.06(a) of the C3 District. . . ." Section 955.06(a) sets forth twelve categories, including "(6) Institution, educational or unit group building thereof. . . ."

Thus, the key issue is whether CCAC, to conduct its own administrative office use of the building, should have (1) sought conditional use approval from council on the basis that CCAC is a public "educational institution" extending its land use as such, or (2) properly pursued the path applicable to continuing an existing business office use in the district.

Ordinance §993.01(a) explains the policy underlying planning commission and council review of conditional uses, on the basis that they are uses of "a public or semi-public character [which] . . . because of the nature of the use and/or its relationship to the overall plan, require the exercise of planning judg-

ment [by the planning commission and council] on location and site plan.''

CCAC itself, at least with respect to its campus area core, clearly is an ''educational institution'' under the ordinance definitions; section 903.02(e) provides:

> ''Educational institution'' means a college or university giving general academic instruction, as prescribed by the Commonwealth. *Included within this term are* areas or *structures used for administration,* housing of students or faculty, dining halls, or social or athletic activities, *when located on the institution's land that is not detached from that portion of the campus where classroom facilities are maintained, by more than street and/or other property owned by the institution.* (Emphasis added.)

Thus ''structures used for administration''—essentially the proposed use here—are included within the term ''educational institution'' when not detached from the campus classroom facilities ''by more than street and/or other property owned by the institution.'' Hence, in determining whether or not an administrative structure is so detached from the campus classroom facilities as to be treated apart from the educational institution for planning purposes, we are to ignore street property and other property owned by the institution; the administrative building must be detached from the classroom facilities by *more* than streets and other college property if it is to be classified as distinct from the ''educational institution'' use.

The ordinance scheme thus clearly indicates that ''structures used for administration'' by an educational institution actually are regarded by Pittsburgh's zoning as uses different in their nature from

the concept of an "office, professional or business" if they are contiguous to the campus core and therefore functionally part of it. Such an interpretation of the ordinance terms is very much in accordance with the policy of §993.01(a) as to conditional uses, stated above, in that concerns with respect to college campus expansion within the city obviously touch upon "the overall plan" and require "the exercise of planning judgment . . . on location and site plan" in respects quite different from the considerations involved in individual office location decisions; a college campus is a substantial complex, with interrelated components. To recognize that intervening streets and college property do not prevent functional contiguity is also rational; within a campus complex, streets (even if public) and college lands facilitate campus circulation, rather than terminate it.

The possible nature of the proposed use here as an integral part of the campus is suggested by the fact that, as the zoning board decision notes, the building will be used for "approximately 27 offices, a computer operation section and conference rooms for seminar classes." Although we are not told if the computer facilities are intended for student use, the conference rooms for seminar classes obviously would be so used.

From Exhibit 3, a neighborhood street plan included in the board's record, it appears to be possible that one may travel from previously-owned land of the community college to the building involved in this case by crossing only Ridge and North Lincoln Avenues and other property identified as "proposed or recent acquisitions" of the community college.

However, this court is not authorized to make its own findings upon such a flimsy basis. We therefore must remand this case so that the common pleas court

may take evidence and make findings of fact as to whether or not this proposal falls within the "educational institution" use by reason of being located upon CCAC land not detached from that portion of the CCAC campus where classroom facilities are maintained, by other than streets and other CCAC property. If the proposed use is thus found to be within the scope of "educational institution" on that factual basis, the action of the board of adjustment must be reversed and CCAC left to pursuing a conditional use application if it desires to proceed. Further, we must note that seminar classroom facilities, if they are in fact found to be involved, would fall under the "educational institution" conditional use approval procedure, by virtue of their own nature.

On the other hand, if CCAC's proposed offices are found to be outside the "educational institution" use category on the factual basis established by our reading of §903.02(e), they are entitled to continued approval.[2]

ORDER

Now, June 3, 1982, the order of the Court of Common Pleas of Allegheny County dated September 9, 1981, is hereby vacated, and this case is remanded for further proceedings in accordance with the foregoing opinion.

---

[2] If CCAC's proposed administrative *offices* are not part of the educational institution then they are, as the common pleas court held, no more than a continuation of the present office use. Where a new owner continues a permitted use on a property, the use itself is determinative, not the change in identity of owners. *Evans v. Zoning Hearing Board of Easttown Township*, 40 Pa. Commonwealth Ct. 103, 109, 396 A.2d 889, 893 (1979). The same result obtains if the previous office use had gained approval by way of special exception; when a special exception is granted, the use becomes a conforming use and it inures to the benefit of a subsequent owner of the land. *Barefoot Appeal*, 437 Pa. 323, 325, 263 A.2d 321, 322 (1970).